UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

          Plaintiff,

      v.

STEVEN G. O'CONNELL,
PETER J. MARK,
CHRISTY L. MCNAMEE,
GREDE, LLC, and GREDE II, LLC
(aka GREDE WISCONSIN SUBSIDIARIES, LLC),

          Defendants.

2017 MAR -7 P 1: 26

JON W. SANFILIPPO
CLERK

Case No. 17-CR- **17-CR- 50**

[18 U.S.C. § 371,
18 U.S.C. § 1001,
18 U.S.C. § 1505,
18 U.S.C. § 1512,
42 U.S.C. § 7413(c)]

Green Bay Division

---

## INDICTMENT

---

**THE GRAND JURY CHARGES:**

At all times relevant to this Indictment,

### General Allegations and Defendants

1.    Defendant Grede, LLC (Grede), was a limited liability corporation organized under the laws of the State of Delaware, and authorized to transact business in the State of Wisconsin, with a principal office located at 4000 Town Center, Suite 500, in Southfield, Michigan.

2.    Defendant Grede II, LLC (Grede II), also was a limited liability corporation organized under the laws of the State of Delaware, and authorized to transact business in the

State of Wisconsin, with a principal office located at 4000 Town Center, Suite 500, in Southfield, Michigan.

3.      At times relevant to this indictment, Grede and Grede II also were known as "Grede Wisconsin Subsidiaries, LLC," and "Grede – Berlin, LLC."

4.      At all times relevant to this indictment, Grede and Grede II operated the Grede Foundry, which was located in Berlin, Wisconsin.

5.      At all times relevant to this indictment, Peter Mark was the Director of Corporate Safety, Health & Environmental for Grede and Grede II.

6.      At all times relevant to this indictment, Christy McNamee was the Safety Coordinator at the Grede Foundry.

7.      At all times relevant to this indictment, Steven O'Connell was an operations manager and plant manager at the Grede Foundry.

**Legal Background**

**Clean Air Act and Asbestos Regulations**

8.      The Clean Air Act (CAA), 42 U.S.C. §§ 7401-7671(q), is the federal law enacted by Congress to protect and enhance the quality of the nation's air resources so as to promote the public health and welfare. Congress established in the CAA a list of hazardous air pollutants, including asbestos.

9.      The CAA authorizes the United States Environmental Protection Agency (U.S. EPA) to establish standards to prevent or limit the emission of hazardous air pollutants into the atmosphere. U.S. EPA has enacted regulations under the CAA to control the removal, handling, and disposal of asbestos. These federal asbestos regulations are commonly known as the

2

National Emission Standard for Asbestos (hereinafter referred to as "the federal asbestos regulations").

10.    The federal asbestos regulations apply in a facility being renovated if the combined amount of regulated asbestos-containing material to be stripped, removed, dislodged, cut, drilled or similarly disturbed is at least 260 linear feet on pipes, at least 160 square feet on other facility components, or at least 35 cubic feet once removed from any facility components.

11.    The federal asbestos regulations provide that, prior to the commencement of any demolition or renovation of a facility, the owner or operator of the facility must thoroughly inspect the affected facility or part of the facility where the demolition or renovation operation will occur for the presence of asbestos. 40 C.F.R. § 61.145(a).

12.    The federal asbestos regulations also provide that each owner or operator of a regulated renovation or demolition activity must notify U.S. EPA (or a delegated state) at least 10 working days before any asbestos removal occurs. 40 C.F.R. § 61.145(b).

13.    Federal law allows U.S. EPA to delegate the authority to implement and enforce the federal asbestos regulations to State governments 42 U.S.C. § 7412(l); 40 C.F.R. § 63.91. The State of Wisconsin has been delegated the authority to administer the asbestos regulatory program in the State, including the authority to receive notices of planned renovations or demolitions. Therefore, required notices of demolition or renovation activities within the State of Wisconsin must be sent to the Wisconsin Department of Natural Resources.

14.    The federal asbestos regulations also provide that each owner or operator of a regulated renovation or demolition activity must adequately wet all regulated asbestos-containing

3

material and ensure that it remains wet until collected and contained or treated in preparation for disposal. 40 C.F.R. § 61.145(c)(6)(i).

15.     The term "regulated asbestos-containing material" includes "friable asbestos material," which is any material containing more than one percent (1%) asbestos (as determined using a specific analytical method) that, when dry, can be crumbled, pulverized or reduced to powder by hand-pressure.

## Occupational Safety and Health Act

16.     In 1970 Congress enacted the Occupational Safety and Health Act, 29 U.S.C. § 651 *et seq.*, to protect workers from death or injury in the workplace. 29 U.S.C. § 651. The Occupational Safety and Health Act requires employers to provide their employees with working conditions that are free of known dangers. 29 U.S.C. § 654.

17.     The Occupational Safety and Health Act authorized the Secretary of the United States Department of Labor to establish and enforce workplace safety and health standards. 29 U.S.C. §§ 652, 655. Under this authority, the Secretary of the Department of Labor has established standards governing employees' exposure to asbestos. 29 C.F.R. §§ 1910.19, 1910.1001. These standards are enforced by the U.S. Department of Labor's Occupational Safety and Health Administration (OSHA).

18.     The Occupational Safety and Health Act also establishes rights of employees to participate in activities that ensure their protection from workplace hazards, including the right to file a confidential complaint with OSHA and to have the employee's workplace inspected by an OSHA Compliance Safety and Health Officer (hereinafter, "OSHA inspector"). 29 U.S.C. § 657.

4

19.     The Occupational Safety and Health Act additionally provides that, in order to carry out the purposes of this Act, the Secretary of the United States Department of Labor is authorized to enter without delay and at reasonable times any factory, plant, establishment, construction site, or other area, workplace or environment where work is performed by an employee of an employer, and to inspect and investigate during regular working hours and at other reasonable times, and within reasonable limits and in a reasonable manner, any such place of employment and all pertinent conditions, structures, machines, apparatus, devices, equipment, and materials therein, and to question privately any such employer, owner, operator, agent or employee. 29 U.S.C. § 657(a).

20.     The Occupational Safety and Health Act further provides that, in making inspections and investigations under this Act, the Secretary of the United States Department of Labor may require the attendance and testimony of witnesses and the production of evidence under oath. 29 U.S.C. § 657(b).

21.     The Occupational Safety and Health Act established an extensive administrative process for initiating and processing OSHA enforcement actions. OSHA inspectors are authorized to conduct workplace inspections, and to prepare reports documenting their findings. By regulation, the OSHA Area Director must review the inspection report of a Compliance Safety and Health Officer. If, on the basis of the report, the OSHA Area Director determines that an employer has violated a requirement of the Occupational Safety and Health Act, or any standard, rule or order promulgated under that statute, the Area Director shall issue a citation to the employer. After receiving a citation, the employer is required to post the citation at the workplace. 29 U.S.C. § 658(a); 29 C.F.R. § 1903.14(a).

5

22.     Under the Occupational Safety and Health Act, if an employer wishes to contest a citation issued by an OSHA Area Director, the employer can seek administrative review of the citation before the Occupational Safety and Health Review Commission ("OSHRC"). 29 U.S.C. § 659(c). When a citation is contested, the case is heard by an Administrative Law Judge (ALJ) appointed by the OSHRC. 29 U.S.C. § 661(j). Upon the application of any party to such a hearing, the OSHRC shall issue subpoenas to compel the attendance and testimony of witnesses or the production of evidence. 29 U.S.C. §§ 661, 161. After a hearing, the ALJ is required to prepare and issue a report setting forth the ALJ's findings and conclusions of law; this report becomes the final order of the OSHRC within thirty days after it is issued, unless the OSHRC elects to review the report. If the OSHRC adopts the ALJ's findings and conclusions of law, the employer can seek judicial review of the OSHRC's decision in the United States Court of Appeals. 29 U.S.C. § 660(a).

## Factual Background

23.     During in or about 2011 and 2012, the Grede Foundry produced molds for parts such as brackets, engine components, manifolds, suspension components, valves, water-works hardware, turbocharger components and pump bodies, and manufactured sand castings in different sizes and patterns to meet its customers' mold-specifications. As part of the manufacturing process, the different products made at the Grede Foundry were sent off-site to be "heat-treated," and Grede or Grede II paid one or more outside businesses to perform the heat treating.

24.     During in or about 2011, management at the Grede Foundry decided to refurbish an old heat treat oven in order to bring it back into service. The plan to refurbish this oven was

6

motivated at least in part by the desire to save money by performing the heat-treating process in-house at the Grede Foundry, rather than paying one or more outside businesses to perform this function. By the summer of 2011, the heat treat oven at the Grede Foundry had not been used for approximately 15 to 20 years, and the roof of the oven had a layer of insulation that contained asbestos.

      25.     In or about September and October of 2011, at least two businesses provided bids for the refurbishment of the heat treat oven. Each bid included statements that any asbestos materials present on the oven had to be removed by Grede or Grede II, and one bid included the words, "testing required."

      26.     In or about October 2011, Grede and Grede II hired a new General Manager of the Grede Foundry, and placed him in charge of refurbishing the heat-treat oven. The new General Manager, M.K., decided to bring in a contractor (B.A.) to handle the refurbishment of the heat treat oven.

      27.     In or about November 2011, Grede and Grede II hired B.A. as the contractor to undertake the refurbishment of the heat treat oven. Between in or about November 2011 and in or about January 2012, the scope of work for the refurbishment project was expanded to include removal of the insulation from the top of the heat treat oven. However, prior to work on the heat treat oven beginning, the material on top of the oven was not sampled or tested for the presence of asbestos.

      28.     In or about January 2012, defendant Steven O'Connell and others known and unknown to the Grand Jury directed a recently-promoted supervisor at the Grede Foundry

7

(D.A.), to have his employees remove the dust and insulation material from the top of the heat treat oven.

29.    In or about January 2012, D.A. and at least five Grede employees used jack-hammers, chisels and other tools and equipment to remove the asbestos-containing insulation from the top of the heat treat oven. The contractor, B.A., was not present while any of this work was performed, and B.A. did not participate in the removal of any dust or material from the top of the oven. The work generated clouds of dust which spread into the nearby maintenance shop and shipping area of the Grede Foundry. The workers were provided with inadequate personal protection equipment in the form of disposable dust masks.

30.    In or about January 2012, while the insulation-removal work was ongoing, D.A. called defendant Steven O'Connell, and told him and defendant Christy McNamee about the dusty conditions. D.A. also told O'Connell and McNamee that he was concerned that there was asbestos in the material being removed from the heat treat oven. At the time, McNamee and O'Connell told D.A. that he and the other workers were fine, and also said that they would have the insulation material tested at a later date. Defendant Steven O'Connell then instructed D.A. to retrieve an industrial vacuum at the facility known as a "Super Sucker" and use it to vacuum off pieces of insulation from the top of the heat treat oven. When D.A. directed his employees to use this vacuum as O'Connell had instructed, the "Super Sucker" blew dust from the insulation into the air. When a facility door was opened, clouds of dust flowed through the open doorway to the outside of the building.

31.    On or about January 11, 2012, the Wisconsin Department of Natural Resources (WDNR) received a complaint from a Grede Foundry employee that asbestos materials had been

8

improperly removed at the Grede Foundry. On or about January 12, 2012, an inspector from the WDNR's Oshkosh, Wisconsin, office – Inspector (J.F.) – responded to the complaint and went to the Grede Foundry, where she was met by defendant Peter Mark, defendant Christy McNamee, and others known and unknown to the Grand Jury. One Grede Foundry representative (W.S.), told the WDNR Inspector that there had been an inspection of the oven, and provided Inspector J.F. with a copy of a report dated October 2011, which indicated that three samples had been collected, analyzed and found not to contain asbestos. However, no one present during the inspection explained to Inspector J.F. that the October 2011 report related to samples that had been collected from the inside of the heat treat oven only, whereas the insulation removed by the Grede Foundry workers had been located on the top of the oven.

32.　　On or about January 19, 2012, an Inspector from the United States Occupational Safety and Health Administration (OSHA) office in Appleton, Wisconsin, conducted an inspection of the Grede Foundry. At the conclusion of this inspection, defendant Christy McNamee provided several documents to the OSHA Inspector, including a letter dated January 12, 2012, which was signed by contractor B.A., which stated that "no asbestos was present" on the roof of the heat treat oven, "just normal foundry dirt and fire brick pieces." At that time, B.A. did not know that statement to be true.

33.　　Between in or about January 2012 and in or about March 2012, Peter Mark and Christy McNamee spoke to Grede Foundry employees who had removed insulation from the top of the heat treat oven. Mark and McNamee also spoke to D.A., the supervisor in charge of the Third Shift at the Grede Foundry. McNamee asked D.A. questions about the working conditions that existed during the removal of insulation from the top of the heat treat oven. When D.A.

9

reminded McNamee that she had been made aware of the work-conditions at the time removal of the insulation from the oven was ongoing, McNamee told D.A. that he needed to watch what he said.

34.     On or about February 17, 2012, WDNR Inspector J.F. returned to the Grede Foundry to conduct another inspection, and informed Peter Mark and Christy McNamee that there had been additional complaints made to the WDNR that the material which she had sampled in January 2012 was not the material which had been removed from the top of the oven. Inspector J.F. collected samples of different materials found around the outside of the heat treat oven, including material which later laboratory testing revealed to contain ten percent chrysotile asbestos. During this inspection, a Grede Foundry representative falsely told Inspector J.F. that the material on top of the heat treat oven had been removed from inside the oven, with the material being brought down through the oven's roof into the interior of the oven, and that, therefore, the removed-material should not be found in areas around the exterior of the heat treat oven. Christy McNamee repeated these false representations, and also stated that the material observed and sampled by Inspector J.F. must have been a different material than what had been removed from the oven.

35.     On or about February 24, 2012, Peter Mark sent an email to another manager of Grede and Grede II, stating in relevant part as follows: "Berlin asbestos testing results are not good news. As you know we collected side-by-side test samples when OSHA, EPA [*sic*] and Department of Health were at Berlin last Friday February 17, 2012. We do not expect to hear from OSHA/DNR/DOH for several more weeks, our test results are as follows…" Mark's email proceeded to explain that "the dust sitting on angle iron structure and on the floor behind the heat

10

treat oven had a detectable level of Chrysotile (asbestos)," and that "[r]esults on some bricks (prior to samples being collected were undisturbed laying [*sic*] on the floor behind an angle iron wall structure) have a 10 to 15% Chrysotile (asbestos). We certainly can argue since these were undisturbed employees were not exposed to this asbestos."

36.     In the email message sent by Peter Mark on or about February 24, 2012, Mark also wrote, "If I had to guess, I think OSHA will be looking for a willful citation on this with a $70,000 fine. Can't guess what the [Wisconsin] DNR or DOH will do with this." The email concluded with the order, "Berlin staff: KEEP THIS INFORMATION UNDER RAP [*sic*] until we can hammer out our final plans of dealing with this issue." Defendant Christy McNamee was copied on this email message, and she forwarded this email to defendant Steven O'Connell on or about February 24, 2012.

37.     On or about February 27, 2012, WDNR Inspector J.F. informed Peter Mark that one of the samples she had collected during her February 17, 2012, inspection of the Grede Foundry had tested positive for asbestos. Inspector J.F. also instructed Mark to limit access to the area of the heat treat oven and to contact a certified asbestos-abatement contractor to clean up the area as soon as possible. In response, Mark insisted that the bricks along the side of the heat treat oven were from a different time, and were not consistent with the material removed from the top of the oven.

38.     On or about February 28, 2012, Peter Mark sent an email to Christy McNamee and others at Grede known and unknown to the Grand Jury, in which he stated that he had revised language in an "Asbestos Awareness Training" document describing the asbestos situation involving the heat treat oven at the Berlin, Wisconsin, facility, by adding the following

11

statements: "During the reconditioning of the Heat Treat Oven some undisturbed material behind a wall was found to contain a small percentage of asbestos. **Because this area was not disturbed, employees were not exposed to this asbestos**."

39. Between on or about February 28, 2012, and in or about March 2012, defendants Peter Mark and Christy McNamee arranged for meetings to be held with employees at the Grede Foundry to discuss the asbestos situation involving the heat treat oven, and to provide training on asbestos issues. At these meetings, the "Asbestos Awareness Training" document revised by Peter Mark on or about February 28, 2012, was shown to the employees. This document included the following statements: "During the reconditioning of the Heat Treat Oven some undisturbed material behind a wall was found to contain a small percentage of asbestos. **Because this area was not disturbed, employees were not exposed to this asbestos**." Following one of these meetings, an employee of the Grede Foundry (K.H.) told Peter Mark that the material removed from the heat treat oven had contained asbestos, and gave Mark a sample of material which the employee said was the same material that had been removed from the oven.

40. Between on or about April 20, 2012, and on or about April 25, 2012, Peter Mark delivered two samples of material to a laboratory for asbestos-analysis. The samples consisted of material from the top of the heat treat oven at the Grede Foundry. However, when he gave these two samples to the laboratory, Peter Mark provided the following address as the "Project Site": "320 Madison, Omro, WI." This address was the personal residence of Christy McNamee at the time, and not an address affiliated with the Grede Foundry or the heat treat oven.

41. Between on or about April 25, 2012, and in or about May 2012, defendant Peter Mark received the laboratory results of the asbestos-analysis performed on the two samples of

12

material which he had delivered to the laboratory on or about April 25, 2012. The laboratory results demonstrated that each sample contained approximately twenty-percent (20%) asbestos. However, neither Peter Mark nor anyone affiliated with the Grede Foundry advised OSHA or the WDNR about the existence of these samples or the results of the asbestos-analysis performed on these samples.

42. In or about March 2012, Grede or Grede II hired an asbestos-abatement contractor to remove asbestos debris from areas around the heat treat oven, and hired the same contractor in or about May 2012 to collect samples of insulation from the heat treat oven. The samples were analyzed for asbestos-content, and five of the thirteen samples were found to contain asbestos at concentrations exceeding the regulatory level of one-percent.

43. On or about June 13, 2012, Christy McNamee sent an email message to Peter Mark and other managers at Grede and Grede II known and unknown to the Grand Jury, which summarized a conversation between Christy McNamee, Grede manager M.M., and a representative of the United States Occupational Safety and Health Administration (OSHA). McNamee's email stated in pertinent part, "We will be issued 2 citations: 1. The respirator that was used when the employee was on top of the oven was a dust mask not an approved respirator for asbestos. Grede was given a one day [*sic*] abetment [*sic*] for this because the work is completed. 2. Grede Berlin did not identify the Asbestos before work was performed, although it was not a high content it was up to almost 2%."

44. On or about June 13, 2012, the Area Director of the OSHA office in Appleton, Wisconsin, issued a citation to "Grede Wisconsin Subsidiaries, LLC," for violations of OSHA regulations committed during the course of the removal of the asbestos-insulation from the top of

13

the heat treat oven at the Grede Foundry. Among other things, the citation offered Grede the opportunity to enter into an "Expedited Informal Settlement Agreement" (EISA), which would include a reduced penalty.

45.     On or about June 15, 2012, defendant Peter Mark sent an email to Christy McNamee, as well as other personnel at the Grede Foundry, to which he attached a document with the file name, "Letter to terminated employees.doc." The June 15, 2012, email message stated, "Attached is the first draft of the letter to the asbestos exposed employees. Your thoughts?" The document attached to defendant Peter Mark's June 15, 2012, email message was a draft form-letter with the date, "June 1, 2011," which began, "A few months ago, while you work [*sic*] at Grede-Berlin in early January, you assisted with the cleaning of the heat treating oven refurbishing project. Due to an internal communication failure, during the few hours you assisted with this project, you may have been exposed to asbestos. This would have been a very minor exposure and is highly unlikely to have any long term effects on your health. Despite that [*sic*] your exposure was very minor, in order to give you reassurance that your health has not been negatively affected, we are offering you a health exam." The letter concluded with the following: "Again, your exposure was very minor and it is highly unlikely there [*sic*] it will every [*sic*] have any negative affects [*sic*] on your future health. As a company we deeply regret this situation occurred and we are offing [*sic*] this health exam to assure you that this minor exposure did not have any affects [*sic*] on your long term health." The letter was to be signed by Christy McNamee.

14

46. On or about June 18, 2012, at the request of Peter Mark, Christy McNamee forwarded the OSHA citation and associated documents to Peter Mark, who forwarded the citation and associated documents to other managers of Grede and Grede II.

47. On or about June 27, 2012, Peter Mark reviewed a letter addressed to OSHA that had been prepared by Christy McNamee; when McNamee sent this draft letter to Peter Mark, she included various documents as attachments, including the February 28, 2012, "Asbestos Awareness Training" document. On or about June 28, 2012, defendant McNamee sent this letter to the OSHA office in Appleton, Wisconsin, along with the attachments, including the "Asbestos Awareness Training" document which represented that the material sampled by the WDNR in February 2012 and found to contain asbestos had been "undisturbed" during the renovation of the heat treat oven, and which also represented that "employees were not exposed to this asbestos." Neither Peter Mark nor Christy McNamee included in the submittal to OSHA the April 2012 laboratory report demonstrating that two samples of material from the top of the heat treat oven each contained approximately twenty-percent (20%) asbestos.

48. On or about July 3, 2012, Grede entered into an "Expedited Informal Settlement Agreement" with OSHA, under which a final penalty of $2,800 was imposed on Grede.

49. In or about July 2012, Grede II hired a new contractor to complete the project of refurbishing the heat treat oven. This new contractor sub-contracted the asbestos-abatement work, and the remaining asbestos-insulation was removed from the heat treat oven in or about July 2012.

15

**COUNT ONE**
(18 U.S.C. § 371)

**THE GRAND JURY FURTHER CHARGES:**

50.     Beginning in or about January 2012, and continuing thereafter until on or about

June 28, 2012, in the State and Eastern District of Wisconsin,

**PETER J. MARK,**
**CHRISTY L. MCNAMEE,**
**STEVEN G. O'CONNELL,**
**GREDE, LLC, and GREDE II, LLC,**

acting personally and through GREDE, LLC's and GREDE II, LLC's agents and employees, and

for the benefit of defendants GREDE, LLC, AND GREDE II, LLC, knowingly conspired with

each other and with others known and unknown to the Grand Jury, to defraud the United States,

and to commit offenses against the United States, namely:

(A)     To knowingly and willfully make materially false, fictitious, and fraudulent

statements or representations in a matter within the jurisdiction of the executive branch of

the Government of the United States, in violation of 18 U.S.C. § 1001;

(B)     To impair, impede and frustrate the lawful governmental functions of the

Wisconsin Department of Natural Resources (WDNR) as delegated by the United States

Environmental Protection Agency (U.S. EPA) and the United States Environmental

Protection Agency to regulate and enforce the requirements of the Clean Air Act's

federal asbestos regulations;

(C)     To impair, impede and frustrate the lawful governmental functions of the United

States Occupational, Safety and Health Administration to investigate the exposure of

16

employees to asbestos and associated hazards, and to protect the health of employees from exposure to asbestos;

(D)     To corruptly obstruct, influence and impede an official proceeding, and to attempt to do so, in violation of 18 U.S.C. § 1512(c);

(E)     To corruptly influence, obstruct and impede the due and proper administration of the law under which a pending proceeding was being had before the United States Occupational, Safety and Health Administration in violation of Title 18, United States Code § 1505; and

(F)     To conceal and cover up violations of the Clean Air Act and the federal asbestos regulations in violation of Title 18, United States Code § 1001.

51.     It was a part of the conspiracy that defendants concealed, misrepresented and hid, and caused to be concealed, misrepresented, and hidden, the existence and purpose of the conspiracy and the acts done in furtherance of the conspiracy.

## Objects of the Conspiracy

52.     One object of the conspiracy was to conceal the true facts and circumstances of the improper removal of asbestos-containing material from the heat treat oven in the Grede Foundry from representatives of the United States Department of Labor, Occupational Safety and Health Administration (OSHA), Area Office in Appleton, Wisconsin; and from the United States Department of Labor, Occupational Safety and Health Review Commission (OSHRC).

53.     Another object of the conspiracy was to conceal the facts and circumstances of the improper removal of asbestos-containing material from the top of the heat treat oven from representatives of the Wisconsin Department of Natural Resources (WDNR) in Oshkosh,

17

Wisconsin.

54. Another object of the conspiracy was to conceal from both OSHA and employees at the Grede Foundry the extent of exposure to asbestos experienced by Grede employees who were directed to remove the asbestos-containing material from the top of the heat treat oven, as well as employees who were working near the heat treat oven at the time of the improper removal of asbestos-containing material, and who were exposed to asbestos fibers released during the improper asbestos-removal work.

## Overt Acts

55. In furtherance of the conspiracy, defendants and other members of the conspiracy known and unknown to the Grand Jury knowingly committed and caused to be committed numerous overt acts, including the following:

56. Between in or about October 2011 and in or about January 2012, defendant Steven O'Connell directed managers and employees under his supervision to remove insulation from the top of the heat treat oven at the Grede Foundry, and ordered employees to make sure that the insulation removed from the top of the oven was cleaned up before other Grede employees arrived for their work-shift the following morning.

57. In or about January 2012, one of the Grede Foundry employees told defendant Steven O'Connell that another employee had collected a sample of the insulation material on top of the oven and had it analyzed for asbestos-content, and that the material turned out to contain asbestos. O'Connell responded by telling the employee that, if anything more was said about the matter by union employees, they would be terminated.

18

58.     On or about January 12, 2012, defendant Christy McNamee directed contractor

B.A. to see the Personnel Director at the Grede Foundry. The Personnel Director (J.R.) typed a

letter, and asked B.A. to sign the letter if he agreed that he had not seen asbestos on top of the

heat treat oven. B.A. advised the Personnel Director that he could not recognize asbestos, but

nevertheless signed the letter. This letter was dated 1/12/12, and included the false statements

and representations that no asbestos had been present on top of the heat treat oven.

59.     On or about February 17, 2012, during the second inspection of the Grede

Foundry by Inspector J.F. of the WDNR, defendant Christy McNamee repeated a false

representation to the WDNR inspector that the insulation on top of the heat treat oven had been

removed from inside the oven, with the material being brought down through the oven's roof

into the interior of the oven, and that, therefore, the material found on the floors around the oven

by the WDNR must have been a different material.

60.     On or about February 24, 2012, defendant Peter Mark sent an email to others

known and unknown to the Grand Jury, stating at the outset that "Berlin asbestos testing results

are not good news," explaining that bricks found on the floor contained "10 to 15% Chrysotile

(asbestos)," and expressing defendant Mark's opinion that, "I think OSHA will be looking for a

willful citation on this with a $70,000 fine." Defendant Mark concluded this email with the

instruction, "Berlin staff: KEEP THIS INFORMATION UNDER RAP [sic] until we can

hammer out our final plans of dealing with this issue."

61.     On or about February 28, 2012, defendant Mark sent an email to Christy

McNamee and others at Grede known and unknown to the Grand Jury, in which he stated that he

had revised language in an "Asbestos Awareness Training" document describing the asbestos

19

situation involving the heat treat oven at the Grede Foundry, by adding the following statements: "During the reconditioning of the Heat Treat Oven some undisturbed material behind a wall was found to contain a small percentage of asbestos. **Because this area was not disturbed, employees were not exposed to this asbestos.**" These statements were false and misleading.

62.     Between on or about April 20, 2012, and on or about April 25, 2012, when defendant Peter Mark delivered and caused to be delivered two samples of asbestos-containing material taken from the heat treat oven to an asbestos-testing laboratory, Mark provided an inaccurate "Project Site" address of "320 Madison, Omro, Wisconsin," as the location from which the samples had been collected, when in truth and in fact, and as defendant Peter Mark well knew at the time, the samples had been collected from the Grede Foundry's heat treat oven by Grede Foundry employees, and the address which Mark provided as the "Project Site" in reality was the personal residence of Christy McNamee, and not an address affiliated with the Grede Foundry or the heat treat oven.

63.     On or about June 15, 2012, defendant Peter Mark sent an email to Christy McNamee, as well as other personnel at the Grede Foundry, to which he attached a document with the file name, "Letter to terminated employees.doc." The June 15, 2012, email message stated, "Attached is the first draft of the letter to the asbestos exposed employees. Your thoughts?" The document attached to defendant Peter Mark's June 15, 2012, email message was a draft letter with the date, "June 1, 2011," which began, "A few months ago, while you work [*sic*] at Grede-Berlin in early January, you assisted with the cleaning of the heat treating oven refurbishing project. Due to an internal communication failure, during the few hours you assisted with this project, you may have been exposed to asbestos. This would have been a very minor

20

exposure and is highly unlikely to have any long term effects on your health. Despite that [*sic*] your exposure was very minor, in order to give you reassurance that your health has not been negatively affected, we are offering you a health exam." The letter concluded with the following: "Again, your exposure was very minor and it is highly unlikely there [*sic*] it will every [*sic*] have any negative affects [*sic*] on your future health. As a company we deeply regret this situation occurred and we are offing [*sic*] this health exam to assure you that this minor exposure did not have any affects [*sic*] on your long term health." The letter was to be signed by Christy McNamee. Ultimately one or more of the employees who had worked on the heat treat oven received a copy of this letter.

64. On or about June 27, 2012, Christy McNamee emailed to Peter Mark a draft letter addressed to the OSHA inspector (S.R.) from OSHA's Appleton, Wisconsin, office; attached to McNamee's email were several other documents, including the "Asbestos Awareness Training" document revised and approved by Peter Mark on or about February 28, 2012, which contained the false and misleading statements, "During the reconditioning of the Heat Treat Oven some undisturbed material behind a wall was found to contain a small percentage of asbestos," and "Because this area was not disturbed, employees were not exposed to this asbestos."

65. On or about June 27, 2012, defendant Mark reviewed and revised the letter to OSHA which had been drafted by Christy McNamee, and emailed the revised letter addressed to OSHA and the original set of attachments back to McNamee. On or about June 28, 2912, defendant McNamee sent this revised letter to the OSHA office in Appleton, Wisconsin, along with the original set of attachments, including the "Asbestos Awareness Training" document revised by Peter Mark on or about February 28, 2012, which document included the false and

21

misleading representations that the material found near the heat treat oven and sampled by the WDNR (and found to contain asbestos at a concentration of approximately ten-percent) was "not disturbed" during the work on the heat treat oven, and which also included the false and misleading statement that "no employees were exposed to this asbestos." At the time this letter was sent to OSHA, neither McNamee nor Mark included with this letter the laboratory records of the asbestos-analysis performed on the two samples which Peter Mark had given to a laboratory on or about April 25, 2012, and which had been found to contain asbestos at a concentration of 20 percent. In addition, neither McNamee nor Mark included in the records sent to OSHA the letter prepared by defendant Mark on or about June 15, 2012, which letter was sent to one or more of the Grede Foundry employees who had been exposed to asbestos during their work on the heat treat oven refurbishment project.

All in violation of Title 18, United States Code, Sections 371 and 2.

22

## COUNT TWO
(18 U.S.C. § 1001(a)(3))

**THE GRAND JURY FURTHER CHARGES:**

66.    Between on or about June 26, 2012, and June 28, 2012, in the State and Eastern District of Wisconsin,

### PETER J. MARK,
### CHRISTY L. MCNAMEE,
### GREDE, LLC, and GREDE II, LLC,

did knowingly and willfully make and use a false writing or document, knowing the same to contain a materially false, fictitious or fraudulent statement or entry, in a matter within the jurisdiction of the executive branch of the Government of the United States, in that defendants CHRISTY MCNAMEE and PETER MARK, each acting within the scope of her and his agency and employment, and for the benefit of GREDE, LLC, and GREDE II, LLC, delivered and caused to be delivered to the United States Occupational Safety and Health Administration a document entitled "Asbestos Awareness Training" that included the false statements and entries that, "[d]uring the reconditioning of the Heat Treat Oven some undisturbed material behind a wall was found to contain a small percentage of asbestos," and "[b]ecause this area was not disturbed, employees were not exposed to this asbestos," when in truth and in fact, and as defendants well knew at the time, samples of the material which employees of the Grede Foundry had removed from the top of the heat treat oven were tested for asbestos-content on or about April 25, 2012, at the request of defendant PETER MARK, and were found to contain approximately 20 percent asbestos; and employees of the Grede Foundry were exposed to asbestos fibers during the removal of the material from the top of the heat treat oven.

All in violation of Title 18, United States Code, Sections 1001(a)(3) and 2.

23

## COUNT THREE
(18 U.S.C. § 1505)

**THE GRAND JURY FURTHER CHARGES:**

67.     On or about January 19, 2012, in the State and Eastern District of Wisconsin,

**CHRISTY L. MCNAMEE,**
**GREDE, LLC, and GREDE II, LLC,**

did corruptly influence, obstruct and impede the due and proper administration of the law under which a pending proceeding was being had before the United States Department of Labor's Occupational Safety and Health Administration (OSHA), and endeavored to do so, in that, on or about January 19, 2012, during an investigation by a representative of OSHA from the Appleton, Wisconsin, Area Office of OSHA, regarding the removal of asbestos-containing material from the heat treat oven at the Grede Foundry, defendant CHRISTY MCNAMEE, acting within the scope of her agency and employment, and for the benefit of defendants GREDE, LLC, and GREDE II, LLC, and acting with the intent and for the purpose of influencing, obstructing and impeding the due and proper administration of the law under which a pending proceeding was being had before OSHA, knowingly and corruptly provided a letter dated January 11, 2012, to the OSHA representative that was signed by a contractor, B.A., and that falsely represented and implied that B.A. and the company for which he worked, P.C.T., had cleaned the entire roof of the heat treat oven and removed all dirt and debris, and that no asbestos had been present, when in truth and in fact, and as defendant CHRISTY MCNAMEE well knew at the time she provided the letter to the OSHA representative, neither B.A. nor P.C.T. had removed the asbestos-containing material from the top of the heat treat oven, and neither B.A. nor P.C.T. had any information or knowledge as to the nature of the material on top of the heat treat oven.

24

All in violation of Title 18, United States Code, Sections 1505 and 2.

## COUNT FOUR
(18 U.S.C. § 1505)

**THE GRAND JURY FURTHER CHARGES:**

68.     Between on or about June 26, 2012, and on or about June 28, 2012, in the State and Eastern District of Wisconsin,

### PETER J. MARK,
### CHRISTY L. MCNAMEE,
### GREDE, LLC, and GREDE II, LLC,

did corruptly influence, obstruct and impede the due and proper administration of the law under which a pending proceeding was being had before the United States Department of Labor's Occupational Safety and Health Administration (OSHA) and the Occupational Safety and Health Review Commission, and endeavored to do so, in that, between on or about June 26, 2012, and on or about June 28, 2012, following the issuance of a citation by the Area Director of OSHA in Appleton, Wisconsin, against "Grede Wisconsin Subsidiaries, LLC," for violations of OSHA regulations that occurred in connection with the removal of asbestos-containing material from the heat treat oven at the Grede Foundry, defendants PETER MARK and CHRISTY MCNAMEE, each acting within the scope of his and her agency and employment, and for the benefit of GREDE, LLC, and GREDE II, LLC, and each acting with the intent and for the purpose of influencing, obstructing and impeding the due and proper administration of the law under which a pending proceeding was being had before OSHA and the Occupational Safety and Health Review Commission, knowingly and corruptly delivered and caused to be delivered to the OSHA office in Appleton, Wisconsin, a document entitled "Asbestos Awareness Training" that included the false and misleading statements and representations that "[d]uring the reconditioning of the Heat Treat Oven some undisturbed material behind a wall was found to

26

contain a small percentage of asbestos," and "[b]ecause this area was not disturbed, employees were not exposed to this asbestos," when in truth and in fact, and as defendants well knew at the time, Grede Foundry employees had removed dry insulation from the top of the heat treat oven in or about January 2012, testing of this insulation conducted at the request of defendant PETER MARK in or about April 2012 had demonstrated that the insulation contained approximately 20 percent asbestos, and Grede Foundry employees had been exposed to asbestos fibers during the removal activities.

All in violation of Title 18, United States Code, Section 1505 and 2.

27

## COUNT FIVE
(18 U.S.C. § 1512(c)(2))

**THE GRAND JURY FURTHER CHARGES:**

69.     Between on or about June 26, 2012, and on or about June 28, 2012, in the State and Eastern District of Wisconsin,

**PETER J. MARK,
CHRISTY L. MCNAMEE,
GREDE, LLC, and GREDE II, LLC,**

did corruptly obstruct, influence and impede an official proceeding before the United States Department of Labor's Occupational Safety and Health Administration (OSHA) and the Occupational Safety and Health Review Commission, and attempted to do so, in that, following the issuance by the Area Director of OSHA in Appleton, Wisconsin, of a citation against "Grede Wisconsin Subsidiaries, LLC," for violations of OSHA regulations that occurred in connection with the removal of asbestos-containing material from the heat treat oven at the Grede Foundry, defendants PETER MARK and CHRISTY MCNAMEE, each acting within the scope of his and her agency and employment, and for the benefit of GREDE, LLC, and GREDE II, LLC, and each acting with the intent and for the purpose of obstructing, influencing or impeding an official proceeding before the Occupational Safety and Health Review Commission, knowingly and corruptly delivered and caused to be delivered to the OSHA office in Appleton, Wisconsin, a document entitled "Asbestos Awareness Training" that included the false and misleading statements and representations that "[d]uring the reconditioning of the Heat Treat Oven some undisturbed material behind a wall was found to contain a small percentage of asbestos," and "[b]ecause this area was not disturbed, employees were not exposed to this asbestos," when in truth and in fact, and as the defendants well knew at the time, Grede Foundry employees had

28

removed dry insulation from the top of the heat treat oven in or about January 2012; testing of this insulation conducted at the request of defendant PETER MARK in or about April 2012 had demonstrated that the insulation contained approximately 20 percent asbestos; and Grede Foundry employees had been exposed to asbestos fibers during the removal activities.

All in violation of Title 18, United States Code, Sections 1512(c)(2) and 2.

## COUNT SIX
(42 U.S.C. § 7413(c)(1))

**THE GRAND JURY CHARGES:**

1.     Between in or about October 2011 and in or about January 2012, in the State and Eastern District of Wisconsin,

**STEVEN G. O'CONNELL,**
**GREDE, LLC, AND GREDE II, LLC,**

each of whom was an owner and operator of a demolition and renovation activity at a facility located at 242 South Pearl Street, in Berlin, Wisconsin, in which at least 160 square feet and 35 cubic feet of regulated asbestos-containing material were removed, knowingly violated the federal Clean Air Act and the federal asbestos regulations, in that defendant STEVEN O'CONNELL, acting within the scope of his agency and employment, and for the benefit of GREDE, LLC, and GREDE II, LLC, knowingly failed to adequately wet all regulated asbestos containing material and ensure that it remained wet until it was collected, contained or treated in preparation for disposal, as required by 40 C.F.R. § 61.145(c)(6)(i).

All in violation of Title 42, United States Code, Section 7413(c)(1) and Title 18, United States Code, Section 2.

30

## COUNT SEVEN
(42 U.S.C. § 7413(c)(4))

**THE GRAND JURY FURTHER CHARGES:**

2.      Between in or about October 2011 and in or about January 2012, in the State and

Eastern District of Wisconsin,

### STEVEN G. O'CONNELL,
### CHRISTY L. MCNAMEE,
### GREDE, LLC, AND GREDE II, LLC,

negligently released and caused the release of asbestos, a hazardous air pollutant listed in 42

U.S.C. § 7412, into the ambient air and, at the time of the release, negligently placed one or more

other persons in imminent danger of death or serious bodily injury.

All in violation of Title 42, United States Code, Section 7413(c)(4) and Title 18, United

States Code, Section 2.

**A TRUE BILL:**

FOREPERSON

Dated: *3-7-17*

GREGORY J. HAANSTAD
United States Attorney

31